1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9    Latroy Timmons,                    )    No. CV 08-263-PHX-JAT (MHB)
                                         )
10              Petitioner,              )    **REPORT AND RECOMMENDATION**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Dora B. Schriro, et al.,            )
13                                       )
                Respondents.             )
14                                       )
                                         )
15   _____)

16   TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

17       This matter comes before this Court upon consideration of a *pro se* Petition for Writ of

18   Habeas Corpus, filed on February 8, 2008, by Petitioner Latroy Timmons, who is confined

19   in the Arizona State Prison. (Doc. #1.)  Respondents filed an Answer on May 19, 2008 (Doc.

20   #10), and Petitioner filed a Reply on June 17, 2008.  (Doc. #11.)

21                           **BACKGROUND**

22       On August 4, 2004, Petitioner was charged in the Maricopa County Superior Court, State

23   of Arizona, in an Indictment with two counts of Sexual Conduct With a Minor, and one count

24   of Kidnapping, all class 2 felonies and dangerous crimes against children.  (Doc. #10, Exh.

25   A.)  The state subsequently filed an allegation of three historical prior felony convictions.

26   (Id., Exh. B.)  The state also filed an allegation of aggravating circumstances other than prior

27   convictions.  (Id., Exh. C.)  On December 4, 2005, Petitioner filed a motion with the trial

28   court requesting that his counsel be removed, and that another attorney be substituted, based

1  upon a claim that he and his attorney could not communicate.  (Id., Exh. D.)  That motion

2  was heard, along with a motion to continue the trial date, on December 7, 2004.  (Id. Exh.,

3  G.)  After hearing Petitioner's complaints regarding his counsel, the trial court denied relief.

4  (Id., Exh. G, at 8; Exh. H.)

5      On February 24, 2005, Petitioner filed a "Motion to Represent [Him]self In Propria

6  Persona," invoking his Sixth Amendment right to represent himself.  (Id., Exh. J.)  The trial

7  judge held a hearing on the motion on March 4, 2005.  (Id. Exh. K.)  After an extensive

8  colloquy with Petitioner, that included the court advising Petitioner that the minimum

9  sentence he could receive if convicted at trial was 37 years and a maximum of 78, the trial

10  court granted Petitioner's request. (Id., Exh. K, at 13, 15.)  Petitioner also executed a Waiver

11  of Counsel Form, certifying his waiver of counsel and desire to represent himself.  (Id., Exh.

12  L.)  Subsequently, after an apparent change of heart, Petitioner filed a "Motion to Withdraw

13  [Him]Self From In Prioria Person, requesting that his *pro se* status be withdrawn and an

14  attorney be appointed to represent him.  (Id., Exh. N.)

15      On May 24, 2005, Petitioner appeared before the court for a change of plea proceeding

16  with his advisory counsel, Mr. Harris.  (Id., Exh. P.)  At the commencement of that hearing,

17  the court granted Petitioner's motion to withdraw from self-representation and appointed Mr.

18  Harris to represent him.  (Id., Exh. P at 3.)  Petitioner then proceeded to plead guilty to Count

19  1 of the Indictment, Sexual Conduct with a Minor, Count 2, as amended, Attempted Sexual

20  Conduct with a Minor Under Age 15, and Count 3, as amended, Attempted Kidnapping with

21  Sexual Intent.  (Id., Exh. P at 4.)  The executed plea agreement set forth the range of

22  imprisonment on Count 1 as follows: a minimum sentence of 13 years, a presumptive

23  sentence of 20 years, a maximum sentence of 27 years, with probation not available. On

24  Counts 2 and 3, the plea agreement set forth the following range of imprisonment: a

25  minimum sentence of 5 years, a presumptive sentence of 10 years, a maximum sentence of

26  15 years, with probation available. (Id., Exh. O at 1.)  The judge went over, and Petitioner

27

28                                                                - 2 -

acknowledged these provisions in court during the plea colloquy.  (Id., Exh. P at 6-7.)
Specifically, the court emphasized the potential sentence on Count 1:

> I want to make sure you understand the possible sentence for these offenses.  As I said to you, there's one dangerous crime against children in the first degree, two dangerous crimes against children in the second degree.  The first degree has a presumptive sentence of 20 years in the Department of Corrections.  Presumptive sentence is the sentence the Court is required to impose upon you by law unless there is a good reason to give you a lesser or a greater sentence.  The minimum sentence is 13 and the maximum is 27 and you are not eligible for probation on that count.

(Id.)

In the plea agreement, the parties stipulated that Petitioner be sentenced to prison on Count 1, and lifetime probation on Counts 2 and 3.  (Id., Exh. O.)  The court went over this stipulation during the plea colloquy, reminding Petitioner again of the potential length of prison sentence under the plea agreement: "[t]he agreement you have with the state is you will be sentenced to the Department of Corrections for Count 1, and as typed, that's presumptively 20, as little as 13 and as many as 27 years."  (Id., Exh. P at 8-9.)

The plea agreement also contained an Addendum in which Petitioner agreed to "judicial factfinding by preponderance of the evidence as to any aspect or enhancement of sentence," and that "the court is not bound by the rules of evidence." (Id., Exh. O at 3.)  The Addendum also reiterated that "by pleading **GUILTY** [Petitioner] will also be waiving and giving up [his] right to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range set forth" in the plea agreement for the offenses.  (Id.) (emphasis in original.)  The court also went over the rights covered by these provisions with Petitioner during the plea colloquy:

> You also have the right to have a jury determine whether there are facts in this case that are present and sufficient to justify a sentence that is greater than the presumptive sentence.

(Id., Exh. P at 10.)

Petitioner acknowledged that he was aware of and understood these rights, was willing to waive them and enter his pleas of guilty.  (Id.)

On May 19, 2005, Petitioner, through counsel, filed a Motion to Withdraw from Plea Agreement and to Continue Sentencing, advising the court that Petitioner "now wishes to

- 3 -

challenge the evidence against him and in particular wishes to challenge the laboratory procedures and analysis of the biological material gathered during the medical examination of the victim." (Id., Exh. T at 2.)  Attached to the motion was a handwritten letter authored by Petitioner in which he expressed his desire to reject the plea agreement because he could not "in good faith admit to something [he] did not do and risk spending the remainder of [his] life in prison." (Id.)  On May 20, 2005, the court heard the motion, and denied relief, finding that Petitioner had not established a "manifest injustice" entitling him to withdraw from his plea agreement:

> The defendant has offered no evidence, nothing in fact to support a manifest injustice has occurred in this case.  He simply wants to change his mind.  Under Arizona law, that's not manifest injustice.  The plea was accepted.  The Court went through its littany asking him if it was voluntary.  No coercion, no force, no threats, no promises, if he understood.  All of those answers would have been yes, otherwise, the Court would not have accepted that plea, so, therefore, the defendant has not shown a manifest injustice and he should not be allowed to withdraw from the plea.

(Id., Exh. U at 6-7.)

Prior to sentencing, Petitioner, through counsel, filed a Sentencing Memorandum, setting forth facts in mitigation of Petitioner's sentence.  (Id., Exh. X.)  The Memorandum specifically noted the difficulties Petitioner experienced in his childhood, the support of his family, his remorse, and his impaired judgment during the commission of the offense.  (Id.)  Numerous letters were submitted by friends and family of Petitioner in support of the claimed mitigation.  (Id.)  During Petitioner's sentencing on June 14, 2005, his attorney argued for a mitigated sentence, based upon the factors outlined in his sentencing memorandum.  (Id., Exh. Z at 7-11.)  In support of an aggravated sentence, the father of the victim came forward and spoke of the harm his daughter and their family experienced as a result of Petitioner's criminal acts:

> My family, they grieve all the time.  She goes through nights and days, cries. She have problems in school because of the situation, nightmares.  The act that this gentleman did, not only did he do it, he did it a gunpoint. . . .she [has had two suicide attempts] . . .She been in a mental institution for a week and a half at Mesa in the hospital . . .Now she have constantly abdominal problems, damage in her uterus.  Her pelvis was messed up. . . .She is my only daughter, and you see her crying in the middle of night calling out, Daddy, help me, having nightmares and stuff like that and you see

1   her crying, weeping.  You don't know what to say to her.  You don't know what to do
    for her and it's just a nightmare not only for her but for my whole family.
2   (Id., Exh. Z at 5-7.)

3   The court advised Petitioner that it had read his letter, and asked him whether or not he had

4   anything he wanted to say on his own behalf.  (Id., Exh. Z at 11.)  Petitioner responded as

5   follows:

6       Yeah.  As far as this plea bargain go, man, I've – I don't want it no more, man.  I rather
        just go to trial, man, because I didn't know I was signing over my – as far as Blakely
7       law or I didn't know I was signing that over.  I was under the impression from 13 to 20,
        man, and I didn't know that before I signed this plea.  I don't even want it no more. . .
8       .I wasn't aware of that.  I wasn't aware it was up to you rather than a jury to aggravate.
    (Id.)
9
    The state argued for the maximum sentence of 27 years on Count 1, based upon Petitioner's
10
    criminal history, and harm to the victim and her family.  The court imposed the maximum
11
    sentence, after setting forth the factors it considered in aggravation and mitigation (in
12
    pertinent part):
13
14      [T]hese are the things that determine the sentence in this case: Let me say for the
        record I explained the defendant's waiver of his rights at the time of the plea.  It is in
15      writing and I explained it to him orally.  I don't take guilty pleas when people don't
        indicate to me that they understand what was happening.  On the mitigating side, Mr.
16      Timmons' family is here.  They care about him.  He's got family support.  In his letter,
        he tells me he has his own family, children, a wife that care about him, need him,
17      depend upon him, and all those things are mitigating and I think those are important and
        they are mitigating.  I have considered them.  It seems pretty self-evident here that Mr.
18      Timmons had had a difficult upbringing and that's mitigating to a certain extent.

19      While I don't put a lot of stock in somebody that gets drunk and goes out and
        commits an offense, because of the fact that this offense does seem to be different than
20      the other kind of things he's done, I will say that to a limited extent, the fact that he may
        not have been in his right mind when this happened is mitigating.  I have considered all
21      those things, and I think they are mitigating evidence.

22      On the aggravating side, there's the prior record, and it is as Mr. Harris says.  There's
        four felonies and five misdemeanors altogether now, and perhaps the most significant
23      thing among the prior felony convictions is he committed one of them while in prison.
        I know it was a prison contraband but committing felonies while being rehabilitated
24      allegedly, to me that's aggravating.  Those are aggravating prior offenses, and Mr.
        Timmons' criminal record is pretty continuous it appears.  Whether it's misdemeanors
25      or felonies, it's pretty continuous and he's been to DOC before.  All those things are
        aggravating.

26      All the stuff I have mentioned up until now doesn't – it just pales in comparison to
        just what happened here, just what happened here, which is the most aggravating thing
27      that I can imagine.  A 13-year-old child is snatched off the city streets at gunpoint,

28                                              - 5 -

forced into a car, forced to commit sexual acts and be raped by an adult male is – who can imagine anything worse as a parent or as a citizen in this community that that kind of thing would happen . . .I certainly can't leave aside the way the child feels.  She is the prime victim here, but it is clear that what happened to her reaches out to the entire family, causes pain and the kind of feelings I just described to Mr. Rice and his wife. . .

   The facts in this case are so aggravating, nothing less than the maximum sentence is appropriate.

(Id., Exh. Z at 13-15.)

The court imposed a sentence of 27 years in prison on Count 1, and lifetime probation on Counts 2 and 3, to commence upon Petitioner's absolute discharged from prison.  (Id., Exh. AA.)

   Petitioner filed a Notice of Post-Conviction Relief on July 11, 2005, which included a request for the appointment of counsel.  (Id., Exh. BB.)  Attorney Thomas Dennis of the Office of the Legal Advocate then filed a Notice of Completion of Post-Conviction Review By Counsel, indicating that, after reviewing all of the relevant court documents, including [Petitioner's] correspondence, he was "unable to find any claims for relief to raise in post-conviction relief proceedings."  (Id., Exh. DD.)  Petitioner thereafter filed a *pro se* Petition for Post-Conviction Relief, in which he raised the following claims:

I        Petitioner Was Subjected to Ineffective Assistance of Counsel During the Acceptance of the Plea and Subsequent Sentencing.

II       It Was Ineffective Assistance of Counsel Where Counsel Did Fail to Object to the Use and Introduction of the Pre-Sentence Report and Use to Aggravate Petitioners Sentence.

III      The Use of A.R.S. §13-702 as to Petitioner Was Unconstitutional in its Application for the Determination of the Existence of Facts to Justify Aggravated Sentence.

IV      Petitioner Did Not Knowingly, Intelligently Enter Into the Plea Agreement Where Counsel Was Ineffective in Explaining the Constitutional Right to Have a Jury Determination of the Facts Other Than Prior Convictions Which Would be Used to Enhance or Aggravate the Sentence He Was to Receive From the Court.

V       It Was Error For the Court Not to Allow Defendant to Withdraw From the Plea Agreement and Go Forward With Trial Proceeding.

VI      The Use of Pre-Sentence Report By the Court Was Error and Did Constitute a Violation of the Petitioner's 6th Amendment Right As

1      Applied Through the 14th Amendment of the United States
       Constitution.
2  (Doc. #1, Attach. A at 5-25.)

3  The trial court denied relief, without hearing, in a minute entry dated August 21, 2006:

4
        The Court has reviewed the Petition for Post Conviction Relief, the State's Response
5  and the Reply.  The Court has also reviewed that the transcript of the change of plea
   proceeding (May 24, 2005).
6
        The Petitioner contends Post Conviction Relief should be granted on the following
7  grounds: counsel was ineffective for failing to explain the rights he was waiving by
   entering the plea, counsel failed to object to the Court's reliance on the Pre-Sentence
8  Report to aggravate his sentence, the use of the Pre-Sentence Report for sentencing
   violated his constitutional right to have a jury find aggravating circumstances, A.R.S.
9  §13-702 requires a finding of an aggravating factors beyond a reasonable, the statute is
   also unconstitutional.  Petitioner further contends that the plea should have been set
10  aside because he did not have effective counsel and that he was overwhelmed by the
   process.
11
        During this case, Petitioner was represented by counsel, then elected proceeded *pro
12  per* with advisory counsel.  The change of plea proceeding reflects that Petitioner was
   advised of the constitutional rights he waived by proceeding with the plea.  The
13  Petitioner was specifically advised by the Court that by entering the plea he was waiving
   his right to have the jury determine whether there are facts sufficient to impose a greater
14  than presumptive sentence.  At that proceeding, the Petitioner acknowledged that he
   understood this right (and others raised) and that he had no questions for the court.
15  After further questioning of the Petitioner, the Court also found that the plea was
   voluntary and knowingly entered into.  In the context of the change of plea proceedings
16  and prior settlement conference in this case, the Court finds no manifest injustice.
   Furthermore, by entering the plea the defendant waived any motions or defenses he may
17  otherwise had available.

18      The defendant is entitled to an evidentiary hearing only when he presents a colorable
   claim-one that, if the allegations are true, might have changed the outcome. . . .It must
19  have the appearance of validity. . . .

20      **THE COURT FINDS** that the Petitioner has failed to present a colorable claim of
   ineffective assistance of counsel or that there was a manifest injustice requiring that the
21  plea be set aside.
   (Id., Attach. B)(citations omitted, emphasis in original.)
22
   The trial court summarily denied Petitioner's motion for rehearing.  (Doc. #10, Exh. GG.)
23
   Petitioner filed a *pro se* petition for review by the Arizona Court of Appeals, raising the same
24
   six claims.  (Id., Exh. HH.)  That petition was summarily denied on September 12, 2007.
25
   (Doc. #1, Attach. C.)  On February 8, 2008, Petitioner filed a timely filed his *pro se* petition
26
   in this court, raising the same six claims presented in state court.  (Doc. #1.)
27

28                                    - 7 -

1

**DISCUSSION**

2

**Merits Analysis**

3

**1.      AEDPA Standard of Review**

4        Pursuant to the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any

5   claim that was adjudicated on the merits in State court proceedings" unless the State court

6   decision was (1) contrary to, or an unreasonable application of, clearly established federal law

7   as determined by the United States Supreme Court; or (2) based on an unreasonable

8   determination of the facts in light of the evidence presented in the State court proceeding.  See

9   28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J.,

10  concurring and delivering the opinion of the Court as to the AEDPA standard of review).

11  "When applying these standards, the federal court should review the 'last reasoned decision'

12  by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  The summary

13  denial of Petitioner's petition for review by the Arizona Court of Appeals renders the trial

14  court's decision on Petitioner's petition for post-conviction relief the 'last reasoned decision'

15  of the state court, subject to this Court's review.  See Y1st v. Nunnemaker, 501 U.S. 797, 803-

16  04 (1991)("later unexplained orders upholding [a] judgment [rejecting a federal claim]" raises

17  a presumption that the reviewing court 'looks through' the summary order to the last reasoned

18  decision).

19       A state court's decision is "contrary to" clearly established precedent if (1) "the state court

20  applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2)

21  "if the state court confronts a set of facts that are materially indistinguishable from a decision

22  of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."

23  Taylor, 529 U.S. at 405-06.  "A state court's decision can involve an 'unreasonable

24  application' of Federal law if it either (1) correctly identifies the governing rule but then

25  applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails

26  _____

27            [1] Antiterrorism and Effective Death Penalty Act of 1996.

28                                              - 8 -

1  to extend a clearly established legal principle to a new context in a way that is objectively

2  unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

3      Finally, the court may not grant habeas relief upon the finding of error, unless the error had

4  a "substantial and injurious" effect on the factfinder's decision. Brecht v. Abrahamson, 507

5  U.S. 619, 631 (1993).

6  **II.      Petitioner's Claims.**

7          I. Petitioner was Subjected to Ineffective Assistance of Counsel
           During the Acceptance of the Plea and Subsequent Sentencing.

8
           II.  It was Ineffective Assistance of Counsel Where counsel did Fail
9          to Object to the Use and Introduction of the Pre-Sentence Report and
           Use to Aggravate Petitioners Sentence.
10
           IV.  Petitioner did not Knowingly, Intelligently Enter Into the Plea
11         Agreement Where Counsel Was Ineffective in Explaining the
           Constitutional Right to Have a Jury Determination of the Facts Other
12         Than Prior Convictions Which Would be Used to Enhance or
           Aggravate the Sentence He was to Receive From the Court.
13
14      The two-prong test for establishing ineffective assistance of counsel was established by the

15  Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on an

16  ineffective assistance claim, a convicted defendant must show: (1) that counsel's

17  representation fell below an objective standard of reasonableness; and (2) that there is a

18  reasonable probability that, but for counsel's unprofessional errors, the result of the

19  proceeding would have been different. Strickland, 466 U.S. at 687-88.  There is a strong

20  presumption that counsel's conduct falls within the wide range of reasonable assistance.

21  Strickland, 466 U.S. at 689-90.  "A fair assessment of attorney performance requires that

22  every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

23  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

24  perspective at the time." Id. at 689.

25      The Strickland test also applies to challenges to guilty pleas based on ineffective assistance

26  of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985).  A defendant who pleads guilty based

27  on the advice of counsel may attack the voluntary and intelligent character of the guilty plea

28                                          - 9 -

1    by showing that the advice he received from counsel fell below the level of competence

2    demanded of attorneys in criminal cases.  <u>Id.</u> at 56.  To satisfy the second prong of the

3    <u>Strickland</u> test, "the defendant must show that there is a reasonable probability that, but for

4    counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

5    <u>Id.</u> at 59.

6        Petitioner was advised early on by the trial court, during a hearing on Petitioner's Motion

7    to Proceed <i>pro se</i>, that if convicted at trial of the charges in the indictment, the minimum

8    sentence he could receive would be 37 years in prison and the maximum 78.  (Doc. #10, Exh.

9    K at 13.)  Prior to Petitioner's change of plea proceeding, he requested that his prior request

10   to proceed <i>pro se</i> be withdrawn, and that counsel be re-appointed to represent him.  The

11   record reflects that the trial court made clear to Petitioner during the plea proceeding the

12   consequences of his guilty plea pursuant to the plea agreement, including: his right to a jury

13   trial on the charges, and to a jury determination of aggravating factors, and the sentencing

14   parameters.  Petitioner acknowledged understanding all of the rights explained, and also

15   acknowledge his waiver of the right to have a jury determine aggravating factors.  The trial

16   court did a thorough job ensuring that Petitioner understood his rights, the consequences of

17   his plea, and that the plea was voluntary.

18       The trial court, in its ruling on Petitioner's petition for post-conviction relief, found that

19   Petitioner had presented no colorable claim of ineffective assistance of counsel. Petitioner's

20   claims of ineffective assistance that relate to the voluntariness of his plea, or his lack of

21   understanding of the consequences of his guilty plea, are belied by the record of the plea

22   proceedings.  Petitioner's blanket assertions that his counsel failed to make him "aware of the

23   constitutional rights,"or that his counsel failed to make him aware of "the nature of the plea,"

24   including what rights he would be "required to waive," even if substantiated, ring hollow

25   when considering that the written, signed plea agreement very clearly set forth these rights

26   and the necessity of waiving them in order to obtain the benefits of the plea agreement.

27       Even if Petitioner could demonstrate that his counsel did not advise him of his

28                                                  - 10 -

1  constitutional rights, independent of the plea agreement,  he has not demonstrated that there
2  is a reasonable probability that, but for counsel's unprofessional errors, the result of the
3  proceeding would have been different.  Strickland, 466 U.S. at 687-88.  See Womack v. Del
4  Papa, 497 F.3d 998, 1003-04 (9th Cir. 2007) (Affirming the district court's denial of the habeas
5  petition because even if defense counsel's performance "were somehow deemed ineffective,"
6  the petitioner "was not prejudiced by his counsel's prediction [of a sentence] because the plea
7  agreement and the state district court's plea canvass alerted [the petitioner] to the potential
8  consequences of his guilty plea.").  See Hill, 474 U.S. 58 ("requiring a showing of prejudice
9  "will serve the fundamental interest in the finality of guilty pleas. . .").

10     Petitioner also claims that his counsel was ineffective for not objecting to the court's
11  consideration of a presentence report.  Such an objection would have been futile, given that
12  there is no state or federal law that prohibits a trial court from relying upon a probation
13  officer's presentence report[2].  The United States Supreme Court has held that a trial judge's
14  act of following state law in relying on uncross-examined hearsay evidence (some of which
15  was in a probation report) that a jury never heard did not violate the Fourteenth Amendment
16  right to due process.  See Williams v. New York, 337 U.S. 241, 245-52 (1949). Any reliable
17  information may be considered by the court in determining the propriety of a sentence within
18  the allotted range.  State v. Fagnant, 176 Ariz. 218, 200 (1993), overruled on other grounds,
19  in State v. Smith, __ Ariz. __, 194 P.3d 399 (2008); see also State v. Carbajal, 177 Ariz. 461,
20  463 (App. 1994) (upholding the sentencing judge's findings of an aggravating factor from
21  reliance on information provided in pre-sentence reports, including summaries from Sheriff's
22  reports).

23

24  _____

25     [2]In fact, Rule 26.4, Ariz.R.Crim.P. requires that a pre-sentence report be prepared in
   all cases in which the court has discretion over the penalty to be imposed and when the
26  potential prison sentence is more than a year, and Rule 26.7(b) allows the parties to present
   any reliable, relevant evidence, including hearsay, in order to show aggravating or mitigating
27  circumstances.

28                                                      - 11 -

1    Petitioner furthermore fails to establish, or even argue, that information in the pre-sentence

2    report, or presented at sentencing, was false or unreliable.  The trial judge imposed sentence

3    after considering both the mitigation presented by Petitioner and the aggravating factors set

4    forth in the record.  The trial court then aggravated Petitioner's sentence based upon

5    Petitioner's four prior felony convictions and the circumstances surrounding the offenses of

6    conviction[3].    Petitioner's hopeful speculation that an objection to the trial court's

7    consideration of the pre-sentence report would have been granted, and even if it was, that a

8    different sentence would have been imposed is not sufficient to establish ineffective assistance

9    of counsel.  See Hendricks v. Calderson, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an

10   account of what beneficial evidence investigation into any of these issues [regarding his trial

11   counsel's alleged investigative failures] would have turned up, [the federal habeas petitioner]

12   cannot meet the prejudice prong of the *Strickland* test.").

13   Petitioner has failed to establish that the state court decision that Petitioner had not raised

14   a colorable claim of ineffective assistance of counsel was contrary to, or an unreasonable

15   application of, clearly established federal law as determined by the United States Supreme

16   Court, or was based on an unreasonable determination of the facts in light of the evidence

17   presented in the State court proceeding.

18
19                    III. The Use of A.R.S. §13-702 as to Petitioner Was Unconstitutional
                          in its Application for the Determination of the Existence of Facts to
20                        Justify Aggravated Sentence.

21   Petitioner complains that the Arizona sentencing scheme, that allows for the aggravation

     of a sentence beyond the presumptive term without a jury finding of the facts supporting
22
     aggravation is unconstitutional.  This claim lacks merit for the following reasons: first,
23
     Petitioner consented in his plea agreement to judicial factfinding of any aggravating
24

25   _____

26        [3]The offense conduct considered by the court in aggravation was admitted by
     Petitioner in the change of plea proceeding, and to the probation officer writing the pre-
27   sentence report.  (Doc. #10, Exh. P at 12-13, Exh. X at 11.)

28                                           - 12 -

1  circumstances, and affirmed that consent on the record during the change-of-plea proceedings,

2  and second, the trial court found that Petitioner had four prior felony convictions, which are

3  Blakely-exempt aggravating circumstances.

4      Under the Supreme Court's recent Sixth Amendment jurisprudence, any fact (besides the

5  finding of a prior conviction) that increases the range of punishment beyond the statutory

6  maximum sentence that would be authorized by the jury's verdict alone must itself be

7  submitted for a jury's determination beyond a reasonable doubt.  See Blakely v. Washington,

8  542 U.S. 296, 301 (2004) (applying "the rule we expressed in Apprendi v. New Jersey, 530

9  U.S. 466, 490 (2000): 'Other than the fact of a prior conviction, any fact that increases the

10 penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

11 proved beyond a reasonable doubt.'") (parallel citation omitted).

12     In Arizona, the presumptive sentence is generally considered the statutory maximum[4].  The

13 trial court sentenced Petitioner in excess of the presumptive sentence (20 years) based, in part,

14 upon Petitioner's four prior felony convictions.  (Doc. #10, Exh. Z at 14.)  Once the court

15 found an Apprendi-compliant aggravating factor, Petitioner was "exposed to a sentencing

16 range that extends to the maximum punishment available under section 13-702."  Price, 217

17 Ariz. at 185 ¶15 (citations omitted). "Once such a factor is properly found-by the jury, based

18 upon defendant's admission, or, for a prior conviction, by the court or the jury-'the Sixth

19 Amendment permits the sentencing judge to find and consider additional factors relevant to

20 the imposition of a sentence up to the maximum prescribed in that statute.'"  Id.

21     Furthermore, Petitioner consented in writing, and then verbally in open court, to judicial

22 fact-finding as part of his plea agreement. In the Addendum to his plea agreement Petitioner

23

24  _____

25     [4]See State v. Price, 217 Ariz. 182 ¶8 (2007)("In Arizona, 'the statutory maximum
    sentence for *Apprendi* purposes in a case in which no aggravating factors have been proved
26  to a jury beyond a reasonable doubt is the presumptive sentence established' by statute.")
    (citations omitted).

27

28                                    - 13 -

initialed the paragraphs in which he agreed to "judicial factfinding by preponderance of the evidence as to any aspect or enhancement of sentence," and that "the court is not bound by the rules of evidence," and that "by pleading **GUILTY** [he would] also be waiving and giving up [his] right to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range set forth" in the plea agreement for the offenses.  (Doc. #10, Exh. O at 3)  (emphasis in original.)  The court also went over the rights covered by these provisions with Petitioner during the plea colloquy:

> You also have the right to have a jury determine whether there are facts in this case that are present and sufficient to justify a sentence that is greater than the presumptive sentence.

(Id., Exh. P at 10.) Petitioner acknowledged that he was aware of and understood these rights, was willing to waive them and enter his pleas of guilty.  (Id.)

The state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented.

### V.  It Was Error for the Court Not to Allow Defendant to Withdraw From the Plea Agreement and Go Forward with Trial Proceeding.

The trial judge found that Petitioner's plea was knowing and voluntary, and that he did not establish a manifest injustice entitling him to withdraw from his plea.   Rule 17.5, Ariz.R.Crim.P. permits a defendant to withdraw from a plea of guilty "when necessary to correct a manifest injustice."  A defendant may withdraw from a plea agreement pursuant to this rule "if he presents substantial objective evidence in support of his claim that he mistakenly believed the terms of the plea agreement were more lenient than the sentence imposed by the trial judge." State v. Diaz, 173 Ariz. 270, 272 (1992).  Cases in which "manifest injustice" has been found by Arizona courts include a defendant's post-plea, pre-sentencing discovery that he had a life-threatening illness, a defendant's mistaken belief that he was pleading to a crime that would not affect his immigration status, a mistaken belief that a sentence could be served in another state, and the parties' and trial court's mistaken belief that the defendant was on parole at the time of the offense.  See State v. Dockery, 169 Ariz.

527, 528-30 (App. 1991)(compiling cases).  The burden of proof is on the defendant to establish that withdrawal from the plea agreement is necessary to correct a manifest injustice. See State v. Romers, 159 Ariz. 271, 274 (App. 1988).

Petitioner based his claim of right to withdraw from his plea on his "actual innocence," and the failure of the court and his counsel to advise him of his right to a jury determination of the facts used to aggravate his sentence.  (Doc. #1 at 13-15; Attach. A at 19-22.)  Petitioner offered no objective evidence of his innocence, other than his desire to challenge the physical evidence against him, and his claim of innocence after his plea was accepted.

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . .

Brady v. U.S., 397 U.S. 742, 756-57 (1970).

To allow otherwise would eviscerate any potency behind the manifest injustice standard. The trial court record amply demonstrates that Petitioner was advised of his constitutional rights, including the right he would be waiving to have a jury determine aggravating factors, that his plea was knowing and voluntary and that he was aware of the sentencing consequences.  Thus, there is no evidence that Petitioner misunderstood his plea agreement and no objective evidence of actual innocence.  See Diaz, 173 Ariz. at 273 ("No substantial objective evidence established that defendant misunderstood the terms of the plea agreement" and hence the trial court was "not obligated to permit the defendant to withdraw from the agreement.").

Petitioner claims that the trial court should have analyzed his right to withdraw from the plea under the "fair and just reason" standard set forth in Rule 11(d)(2)(B), Fed.R.Crim.P. (Doc. #1 at 15; Attach. A at 19-22.)    The Arizona courts are not bound, however, by the Federal Rules of Criminal Procedure.  See McCarthy v. United States, 394 U.S. 459, 465 (1969) (recognizing that "the procedure embodied in Rule 11 has not been held to be constitutionally mandated") (footnote omitted); see also U.S. v. Ullyses-Salazar, 28 F.3d 932,

939 (9th Cir. 1994) ("Because the convictions that [the defendant] challenges were obtained in state court, we do not judge the plea colloquies according to the standards derived from Federal rule of Criminal Procedure that are applied to pleas in federal court."), overruled on other grounds by U.S. v. Gomez-Rodriguez, 96 F.3d 1262, 1265 (9th Cir. 1996) (*en banc*).

Furthermore, a state court's decision on a defendant's right to withdraw from a plea agreement does not present a federal constitutional issue.  See Langford v. Day, 110 F.3d 1380, 1388-89 (9th Cir. 1997) (holding that the Montana state courts' application of the state's "good cause" standard to withdraw from a plea does not raise an issue of federal due process). It is "well-established" that there is no right to withdraw from a guilty plea.  Shah v. U.S., 878 F.2d 1156, 1161 (9th Cir. 1989).  Given that there is no "clearly established" federal law or precedent on the right to withdraw from a plea, then the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  In any event, under either the state "manifest injustice standard," or the federal "fair and just reason" standard, Petitioner's failure to present any substantiation in support of his grounds for withdrawal of the plea dooms this claim.

> **VI.  The Use of Pre-Sentence Report By the Court Was Error and Did Constitute a Violation of the Petitioner's 6th Amendment Right As Applied Through the 14th Amendment of the United States Constitution.**

This claim likewise fails for the reasons set forth for the denial of claim II above.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

1    6(b) and 72.  The objections shall not exceed 15 pages in length.  Thereafter, the parties have

2    ten days within which to file a response to the objections.  The responses shall not exceed 10

3    pages in length.  Failure to timely file objections to the Magistrate Judge's Report and

4    Recommendation may result in the acceptance of the Report and Recommendation by the

5    district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121

6    (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the

7    Magistrate Judge will be considered a waiver of a party's right to appellate review of the

8    findings of fact in an order of judgment entered pursuant to the Magistrate Judge's

9    recommendation.  See Fed. R. Civ. P. 72.

10       DATED this 26th day of November, 2008.

11

12

13                                    Michelle H. Burns
                                      United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -